UNITED STATES DISTRICT COURT
District of Minnesota

19cv472DWF/TNL

| | |
|---|---|
| Brock Fredin, | |
| Plaintiff, | Case No. |
| --against-- | COMPLAINT |
| City Pages, | Jury Trial Demanded |
| Michael Mullen, | |
| Defendants. | RECEIVED BY MAIL FEB 25 2019 CLERK, U.S. DISTRICT COURT ST. PAUL, MN |

Plaintiff Brock Fredin ("Plaintiff"), proceeding pro se, hereby alleges the following against Defendant City Pages ("Defendant City Pages") and Defendant Michael Mullen ("Defendant Mullen") (collectively "Defendants"):

## NATURE OF THE CASE

1. Plaintiff brings this action against Defendants for defamation per se, intentional infliction of emotional distress, negligent infliction of emotional distress, appropriation, publication of private facts, and negligence. The claims arise from Defendants' publishing patently false statements concerning Plaintiff in a City Pages article titled "Accused Stalker Brock Fredin is writing a horror story, and he's the main character." Specifically, Defendants' published an article in the City Pages stating that Plaintiff sent "sexually suggestive messages" and contacted two women "dozens of times by unfamiliar numbers and dating profiles" — numbers and messages not connected to Plaintiff Fredin and was contrived

1

by Defendants. This bogus unwanted message allegation is categorically untrue and defamatory per se. As a result, Plaintiff seeks actual and punitive damages in addition to injunctive relief.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. The Court also has federal question jurisdiction under 28 U.S.C. § 1331.

3. Venue is proper pursuant to 28 U.S.C. § 1332(b)(1) and (b)(2) because the events that gave rise to this action occurred in this Judicial District.

## THE PARTIES

### THE PLAINTIFF BROCK FREDIN

4. Plaintiff Brock Fredin is a citizen of the state of Wisconsin with an address of 1180 7th Ave, Baldwin, WI 54016.

### THE DEFENDANT CITY PAGES

5. Upon information and belief, Defendant City Pages is a newspaper published weekly by Star Tribune Media, LLC doing business as a registered corporation in Minnesota with an address of 650 3rd Ave S, Ste 1300, Minneapolis, MN 55488.

### THE DEFENDANT MICHAEL MULLEN

6. Defendant Michael Mullen is employed as a news editor for the City Pages. The City Pages is a newspaper

published weekly by Star Tribune Media, LLC doing business as a registered corporation in Minnesota with an address of 650 3rd Ave S, Ste 1300, Minneapolis, MN 55488. Upon information and belief, Defendant Michael Mullen is a citizen of the state of Minnesota. This action is brought against Defendant Mullen in his professional and personal capacities.

## FACTUAL ALLEGATIONS

### Background

7. Defendant Mullen is a columnist for the City Pages. He graduated from the University of Minnesota in 2009. Defendant Mullen is currently employed as a news editor for the City Pages.

8. Apart and aside from his yellow journalism career, Defendant Mullen maintains extrajudicial conduct with local law enforcement to orchestrate vicious public tabloid attacks. He writes for a bigoted organization that locals call the "star and sickle" identified as the Star Tribune. In his column, Defendant Mullen claims to be bringing awareness to local "blotter" (crime). Yet, he uses the column with the financial backing of the City Pages — shielding him from liability — to publish abusive and vulgar screeds and propoganda. As a part of the offensive content in his column, Defendant Mullen publishes false and defamatory information about

Indeed, Defendant Mullen publishes photos on Facebook engaging in a non-professional romantic relationship with City Pages managing editor Hannah Sayle.

his targets in an attempt to shame and stigmatize them.

9. By way of example of his abusive conduct, Defendant Mullen uses improper and unethical quid pro quo relationships forged over several years with the Minneapolis and Saint Paul City Attorneys office as anonymous sources for his column. A cruel and sinisister aspect of this quid pro quo relationship, however, is that Defendant Mullen uses his column to "prosecutor shop" bogus claims and to improperly publicly "shame" individuals he personally dislikes. He alone choosing which individuals to publicly ridicule. In addition, he uses his "printable" tabloid articles to personally direct scores of others to taunt his targets using his quid pro quo relationship with the Minneapolis and Saint Paul city Attorneys office as the vehicle to do so. His prejudicial media coverage funded by advertisement revenue from would be escorts offering professional "massages", "explicit chat", and illegimate businesses selling drug paraphenalia.[2]

10. Defendendant Mullen has abdicated ethical Journalism, by declaring and waging publicity wars against his targets. He has combined with others to ruin his targets for the sole purpose of fatiguing them into compliance with his radical agenda.

---

[2] See January 23-29, 2019 City Pages page 34. Listing advertisements for "Night Exchange", "Minx Showpalace", "True Relaxation Massage", "Dream Girls", and "glass pipes."

4

## Defendant Mullen's Defamation of Plaintiff Fredin

11. Unfortunately, Plaintiff Fredin became a victim of Defendant Mullen's annihilation in the press. Defendant Mullen wrote a disparaging article concerning Plaintiff Fredin entitled "Accused Stalker Brock Fredin is writing a horror story, and he's the main character" in an attempt to smear his character, cause him to lose his employment and subject him to public ridicule. On February 22, 2017, Defendant Mullen published this article concerning Plaintiff Fredin to thousands within the print and Internet editions of the City Pages. The overwhelming majority of the article contained patently false and defamatory statements concerning Plaintiff Fredin.

12. Defendant Mullen's press annihilation and defamatory article concerning Plaintiff Fredin escalated to the point where he began publishing wholly baseless and unsubstantiated claims that Plaintiff Fredin engaged in criminal conduct and sent "sexually suggestive [messages] continu[ing] for weeks" to an unnamed woman and contacted a woman that Plaintiff Fredin had never - met, seen, or spoken with - named Catherine Schaefer "dozens of times by unfamiliar cell phone numbers and online dating profiles." (See Ex. 1)

13. Illustrative of Defendant Mullen's false reporting, Defendant Mullen clearly adopted the false defamatory statements of the named woman that "she cancelled [a date] and told Fredin to stop

5

contacting her" and that she "took to Facebook, detailing how a guy she'd never met was haunting her. A friend shared her post. Another Twin Cities woman soon reached out. Schaefer wasn't Fredin's only victim" and that the unnamed woman "coached Schaefer through getting her own [restraing order]." Furthermore, Defendant Mullen published false claims that Plaintiff Fredin tacitly created "profiles posted under their names on datingpychos.com" while falsely accusing Plaintiff Fredin of improper conduct involving his "Software engineering" profession. *Longbehn v. Schoenrock*, 727 N.W.2d 153, 158 (Minn. Ct. App. 2007) (holding "statements are defamatory per se if they falsely accuse [of] improper conduct involving a person's profession.")

14. In connection with Defendant Mullen's article, on February 22, 2017, the Twitter account @cardsagsthrsmt posted false claims that Plaintiff Fredin raped an unnamed woman in 2010:

> **CardsAgstHarassment** @CardsAgstHarsmt
> The power of sharing. Within hours of the stalking post going up, a rape survivor comes forward. He remains free. (Shared w/ her permission)
>
> http://www.citypages.com/.../accused-stalker-brock.../314355703
> I've been debating whether or not to post this, but I feel I must. This man raped me 7 years ago. The St. Louis Park police didn't take me seriously then, but I hope they will see now that he is a predator. As I type these words, my hands are shaking, my breath is short, and I have a deep, pulsing ball in the pit of my stomach. This is the physical manifestation of the PTSD I have as a result of him violating my body and robbing me of my dignity. I resent the fact that the police let my case drop. It would have spared his future victims from the heartache and trauma they are most certainly enduring now.
>
> Accused stalker Brock Fredin is writing a horror story, and he's the main character | City Pages
>
> RETWEETS 54   LIKES 76
> 10:39 AM - 22 Feb 2017

15. The above published allegations in Defendant Mullen's article are patently false and defamatory perse. Upon information and belief, the allegations by these women in Defendant Mullen's article claiming over "two years" they were "contacted dozens of times by unfamiliar cell phone numbers and online dating profiles" are to Plaintiff Fredin's knowledge entirely false and contrived. Indeed, Plaintiff Fredin believes that Defendant Mullen solicitated these women to make these false allegations against him or Defendant Mullen fabricated the existence of these allegations altogether.

16. Defendant Mullen published the above article containing defamatory statements about Plaintiff Fredin knowing that the statements were false and with reckless disregard for the truth. Moreover, to the extent he did not fabricate the existence of the above allegations, Defendant Mullen clearly adopted the defamatory statements of the women in his article by making the statements that the women are "innocent victims turned into badass heroines" and stating that Plaintiff Fredin "contacted" the named woman "over the next two years ... dozens of times." Upon information and belief, Defendant Mullen's defamatory article was published and seen by thousands of third-parties and remain publicly available on the citypages.com website. (See Ex.1)

17. Perhaps most troubling about Defendant Mullen's whole corrupt reporting enterprise is his failure to disclose his prior relationship and dealings to the Minneapolis and Saint Paul City Attorneys' office and his connection to the owner of @cardsagsthrsmt at the time of publishing the above article.

18. As his records demonstrate, Defendant Mullen conducted no factual investigation whatsoever into Plaintiff Fredin's or the above mentioned women's allegations. For example, he never sought documents or police reports related to their allegations of harassment, Plaintiff Fredin's remarks, or the women's psychiatric records. He never once investigated the phone numbers contained in each woman's false allegations. Instead, Defendant Mullen adopted each woman's allegations as a matter of course. (See Ex. 2)

19. As a result of Defendant Mullen's unlawful conduct and defamatory statements in the above-referenced article, Plaintiff Fredin has suffered immense harm. Defendant Mullen's defamatory statements have permanently stigmatized Plaintiff Fredin and subjected him to public ridicule. Moreover, Plaintiff Fredin has suffered the loss of employment and financial opportunities as a result of Defendant Mullen's false and defamatory statements mentioned above. Plaintiff Fredin also continues to suffer

8

ongoing mental anguish due to Defendant Mullen's unlawful statements about him.

## COUNT I: DEFAMATION PER SE
### (Defendants)

20. Plaintiff Fredin re-alleges and incorporates by reference paragraphs 1-19 of the complaint as though fully fully set forth herein.

21. Defendants has made false and defamatory statements concerning Plaintiff Fredin as set forth above in this complaint. (See Ex. 1)

22. Defendants statements are statements of fact and are demonstratably false. (See Ex. 2)

23. Defendants defamatory statements accuse Plaintiff Fredin of committing a serious crime and are therefore defamatory per se. (See Ex. 1)

24. Defendants defamatory statements accuse Plaintiff Fredin of improper conduct involving Plaintiff Fredin's profession, i.e. software engineering, and are therefore defamatory per se. Id.

25. Defendants have published and continues to publish these false statements to numerous individuals in print and on their website. Id.

26. Defendants enjoys no privilege concerning these statements

26. As a result of Defendants defamatory statements and unlawful conduct, Plaintiff Fredin has suffered severe harm and is entitled to actual and punitive damages in an amount to be proven

at trial. Plaintiff Fredin also seeks injunctive relief requiring Defendants to remove the defamatory material and article from their citypages.com website.

COUNT 2: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Defendants)

27. Plaintiff Fredin re-alleges and incorporates by reference paragraphs 1-26 of the complaint as though fully set forth herein.

28. Defendants have engaged, instigated, and directed a course of extreme and outrageous conduct with the intention of causing, or reckless disregard for causing, emotional distress and fear to Plaintiff Fredin, namely the publication and dissemination and/or broadcasting false claims through the above-referenced article to third-parties.

29. Defendants, through their agents, surrogates and/or sources, and extending through Defendant Mullen were aware the reports were false, reckless and/or negligent in iniating false reports concerning Plaintiff Fredin. (See Ex. 2)

30. Plaintiff Fredin suffered the loss of his employment and professional livelihood at the young age of thirty-four (34).

31. As a proximate result of Defendants actions, Plaintiff Fredin has suffered, and continues to suffer severe and extreme emotional distress,

entitling him to actual and punitive damages, in an amount to be proven at trial.

## COUNT 3: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Defendants)

32. Plaintiff Fredin re-alleges and incorporates by reference paragraph 1-31 of the complaint as though fully set forth herein:

33. Defendants owed Plaintiff Fredin a duty of care, including a duty to not cause Plaintiff Fredin harm.

34. Defendants breached this duty of care by engaging in the above-referenced actions.

35. On February 22, 2017, Defendants, through their agents, surrogates, and/or extending through Defendant Mullen were aware the above-referenced statements were false, reckless, and/or negligent concerning Plaintiff Fredin. (see Ex. 2)

36. On February 22, 2017, Defendants through their agents, surrogates, and/or extending through Defendant Mullen were aware the above-referenced statements and reports were false, mischaracterized, and a danger to Plaintiff Fredin and others.

37. On February 22, 2017, Defendants through their agents, surrogates, and/or extending through Defendant Mullen had an affirmative duty to protect the Plaintiff Fredin. Defendants failed to take reasonable actions to attempt to intercept and/or investigate the above-referenced statements or

11

reports consistent with their affirmative duty to investigate. id.

38. In February 2017, Plaintiff Fredin suffered the loss of employment and his professional livelihood had Defendants not breached their duty of care and had acted in a manner consistent with their affirmative duty to investigate.

39. Defendants negligence was, at the very least, a substantial factor in causing Plaintiff Fredin's injuries.

40. As a proximate result of Defendants actions, Plaintiff Fredin has suffered, and continues to suffer severe and extreme emotional distress, entitling him to actual and punitive damages, in an amount to be proven at trial.

## COUNT 4: APPROPIATION
### (Defendants)

41. Plaintiff Fredin re-alleges and incorporates by reference paragraphs 1-40 of the complaint as though fully set heirein.

42. Defendants have intentionally appropriated Plaintiff Fredin's identity, likeness, reputation, social and professional standing, and prestige to benefit by generating advertisement revenue. (See Ex.1)

43. As a proximate result of Defendants actions, Plaintiff Fredin has suffered, and continues to suffer severe and extreme emotional distress,

12

entitling him to actual and punitive damages, in an amount to be determined at trial.

### COUNT 5: PUBLICATION OF PRIVATE FACTS
(Defendants)

44. Plaintiff Fredin re-alleges and incorporates by reference paragraphs 1-43 of the complaint as though fully set forth herein.

45. Defendants have published private facts concerning Plaintiff Fredin that is highly offensive and not a legitimate concern to the public. (See Ex. 1)

46. Defendants have published fabricated statements of private facts which are demonstrably false, namely that Plaintiff Fredin "contacted" a named Woman "dozens of times by unfamiliar numbers and dating profiles. (See Ex. 2)

47. Defendants have published fabricated statements of private facts which are demonstrably false, namely that Plaintiff Fredin sent an unnamed Woman "sexually suggestive" messages. Id.

48. As a proximate result of Defendants actions, Plaintiff Fredin has suffered and continues to suffer severe and extreme emotional distress, entitling him to actual and punitive damages, in an amount to be proven at trial.

### COUNT 6: NEGLIGENCE

49. Plaintiff Fredin re-alleges and incorporates by reference paragraphs 1-48 of the complaint

as though fully set forth herein:

50. Defendants owed Plaintiff Fredin a duty of care, including a duty to not cause Plaintiff Fredin harm.

51. Defendants breached this duty of care by engaging in the actions described above.

52. Between January 1, 2014 and February 22, 2017 Defendants through their agents, surrogates, and/or sources, and extending through Defendant Mullen were aware that the reports were false, reckless, and/or negligent in failing to investigate, retrieve, and/or view Saint Paul Police Complaint No: 16122823 filed by Catherine Schaefer concerning Plaintiff Fredin listing the numbers as "telemarketers". (See Ex. 2)

53. Between November 15, 2016 and February 22, 2017 Defendants through their agents, surrogates, and/or sources, and extending through Defendant Mullen were aware that the reports were false, reckless, and/or negligent in failing to investigate, retrieve, and/or view Saint Paul Police Complaint No: 16122823 filed by Catherine Schaefer concerning Plaintiff Fredin listing the numbers owned by "Twin City Steel Erectors, Inc" and there being "no known connection between BROCK FREDIN and that company." Id.

54. Between January 2, 2017 and February 22, 2017 Defendants through their agents, surrogates, and/or sources, and extending through Defendant

14

Mullen were aware that the reports were false, reckless, and/or negligent. In failing to investigate, retrieve, and/or view Saint Paul Police complaint No: 16122823 filed by Catherine Schaefer concerning Plaintiff Fredin listing the numbers 763-515-4376, 619-300-7684, 206-201-1847 where each subpoena initiated by the Saint Paul Police characterized the numbers as having no known connection to Plaintiff Fredin. Id.

55. Between December 1, 2015 and February 22, 2017, Defendants, through their agents, surrogates and/or sources, extending through Defendant Mullen were aware that the reports were false, reckless, and/or negligent in failing to investigate, retrieve, and/or view court records available in Ramsey County District court case No. 62-HR-CV-16-46 captioned Miller v. Fredin or case No. 62-HR-CV-16-411 captioned Schaefer v. Fredin, listing marked exhibits, Facebook chat logs, text messages, emails, or hearing transcripts, and falsely claiming that "sexually suggestive" messages were sent "for weeks." Id.

56. Defendants failed to take reasonable actions to attempt to intercept and/or investigate the above-referenced false police reports and court records consistent with their affirmative duty to investigate. Id.

57. Between February 22, 2017 and present, Defendants had an affirmative duty to protect Plaintiff Fredin where he suffered the loss of his professional livelihood, financial opportunites, and employment that otherwise would have been avoided had Defendants not breached their duty of care and had acted in a manner consistent with their affirmative duty to investigate.

58. Defendants were aware that forensic analysis and all available reasonable evidence, case files, and reports revealed that the above-referenced allegations were not corroborated. Id.

59. As a proximate result of Defendants actions, Plaintiff Fredin has suffered and continues to suffer severe and extreme emotional distress, entitling him to actual and punitive damages, in an amount to be proven at trial.

60. Defendants negligence was, at the very least, a substantial factor in causing Plaintiff Fredin's injuries.

## ATTORNEY FEES AND COSTS

Plaintiff Fredin demands reasonable attorney fees, costs, and fees pursuant to 28 U.S.C. §1927.

## JURY TRIAL DEMANDED

Plaintiff Fredin demands a jury on all issues, which may be properly tried by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Fredin Prays that the court:

a. Enter Judgement in favor of Plaintiff Fredin against Defendants

b. Enter Judgement awarding Plaintiff Fredin compensatory damages on all counts heirein to compensate Plaintiff Fredin for Defendants activity complained of heirein and for any injury complained of heirein, inclusive of interests and costs, in an amount to be determined at trial.

c. Enter Judgement awarding punitive, exemplary, enhanced and/or treble damages as allowed by applicable law in an amount to be determined at trial

d. Enter Judgement awarding Plaintiff Fredin injunctive relief requiring defendants to remove their defamatory statements concerning

17

Plaintiff Fredin from their CityPages.com Website

e. Enter Judgement awarding Plaintiff Fredin his fees and costs reasonably incurred in this action as allowed by applicable state and federal law; and

f. Order such other relief that the court deems Just and appropriate.

Dated: February 14, 2019

/s/ Brock Fredin
1180 7th Ave
Baldwin, WI 54002
(612) 424-5512 (tel.)
brockf12@gmail.com
Plaintiff, pro se