**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Brock Fredin,<br><br>　　　　　Plaintiff,<br>　v.<br><br>City Pages & Michael Mullen,<br><br>　　　　　Defendants. | Case No.: 19-cv-472 (DWF/TNL)<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT WITH PREJUDICE FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6)** |

*Pro se* Plaintiff Brock Fredin filed this suit while incarcerated for stalking and for violation of a harassment restraining order. The judge who sentenced him, Ramsey County Judge Sophia Y. Vuelo, gave him the maximum—365 days in the workhouse—despite Fredin having no criminal record. In explaining this unusually harsh sentence, Judge Vuelo referred to Fredin as a "deeply deranged, narcissistic, psychotic, sociopathic individual" who had "misused" and "abused" the legal system to the "highest degree." He has "no sense of a grip on reality," she continued, and "no respect whatsoever for our legal system and the laws." Tr. of Sentencing Hr'g ("Sentencing Hr'g") at 32:13-36:15, *State v. Fredin*, Case No. 62-CR-17-3156 (Ramsey Cty. Dist. Ct. Oct. 17, 2018), attached as Exhibit A to the Declaration of Leita Walker ("Walker Declaration").[1]

---

[1] Fredin's conviction for violation of Minn. Stat. § 609.749 subd. 2(6) was later vacated after the Minnesota Supreme Court found that statute unconstitutional. *See* Order Vacating Conviction of Ct. I, *Fredin*, Case No. 62-CR-17-3156 (Aug. 29, 2019). Regardless, he stands before this Court a convicted criminal. *See* Order Sentencing Defendant on Count II, *Fredin*, Case No. 62-CR-17-3156 (Sept. 3, 2019). The Court may properly consider records from Fredin's criminal case, as well as the judicial records upon which Defendants based their news report. *See, e.g.*, *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007); *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

Fredin's lawsuit—in particular, his frivolous Amended Complaint, filed after Defendants initially moved to dismiss—is yet another example of Fredin's "misuse" and "abuse" of the legal system.

Sounding in libel (though Fredin purports to allege six separate counts), the lawsuit arises from a news report about Fredin's harassing behavior that Defendant Michael Mullen authored for publication by *City Pages* (the "Report"). *See* Compl. Ex. 1 & Am. Compl., ECF Nos. 1-1, 26.[2] Because *City Pages* published the Report on February 22, 2017, *see* Am. Compl. ¶ 13, Minnesota law required Fredin to commence this suit on or before February 21, 2019. *See* Minn. Stat. § 541.07(1) (codifying two-year statute of limitations for libel and other tort claims). However, he did not even *file* his original Complaint until February 25, 2019, and he did not *serve* the original Complaint on Mullen and Star Tribune Media Company LLC (the entity that owns the publication that is *City Pages*) for another six months. Fredin's lawsuit is subject to dismissal for this reason alone.

Beyond its being untimely, Fredin's lawsuit fails for a host of other reasons, not least because the Defendants relied on publicly available court documents in publishing the Report, and Minnesota's fair report privilege thus shields Defendants from liability. Fredin's claims should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

---

[2] Fredin's Amended Complaint, like his original Complaint, refers to Exhibits 1 and 2. However, he did not file any exhibits with his Amended Complaint. Defendants assume that references in the Amended Complaint to Exhibits 1 and 2 are references to the exhibits filed with the original Complaint.

## PROCEDURAL BACKGROUND

Fredin filed this lawsuit on February 25, 2019, asserting claims of defamation, intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), appropriation, publication of private facts, and negligence arising out of a *City Pages* news report published on February 22, 2017. *See* Compl.

On April 25, 2019, this Court granted Fredin's motion to proceed *in forma pauperis* and ordered him to submit a properly completed Form USM-285 for each defendant within 30 days, after which the Clerk of Court would seek waiver of service from Defendants. Order at 2-3, ECF No. 11.

After receiving the information from Fredin sometime prior to May 30, 2019, the Clerk sent a Notice of Lawsuit and Request for Waiver to each Defendant, ECF No. 14. Neither executed a waiver of service. Order, Aug. 2, 2019, ECF No. 15.

The Marshals served a copy of the Complaint in this matter upon Star Tribune Media Company LLC (hereafter, "*City Pages*") on August 12, 2019, and on Mullen on August 14, 2019, nearly six months after the statute of limitations ran on Fredin's claims.

Defendants moved to dismiss Fredin's Complaint on September 3, 2019. Mot. to Dismiss, ECF No. 19.

On September 24, Fredin filed his Amended Complaint. The Amended Complaint differs from the original Complaint in only two notable respects: (1) Fredin asserts that Wisconsin law applies to his defamation claim, *see* Am. Compl. ¶¶ 1, 5 & n.1, a legal conclusion this Court need not credit, and (2) he references a copyright claim as the basis

for federal question jurisdiction, *see id.* ¶ 3, though his Amended Complaint contains not a single factual contention that would support a claim for copyright infringement.[3]

Defendants now bring this motion to dismiss Fredin's Amended Complaint with prejudice.

## FACTUAL BACKGROUND

Fredin, who alleges he is a Wisconsin citizen, filed this federal lawsuit against Mullen, a Minnesota citizen, and *City Pages*, a publication of Star Tribune Media Company LLC, which is a Delaware corporation with its principal place of business in Minneapolis, Minnesota. Am. Compl. ¶¶ 5-7. Although Fredin alleges that this Court has jurisdiction based both on diversity and on the existence of a federal question, the well-pleaded allegations of the Complaint show that no federal question exists.[4]

Instead, Fredin alleges six state-law torts, all arising from the Report and all based on his allegation that it contains false and defamatory statements about him. The Report, published under the headline "Accused stalker Brock Fredin is writing a horror story, and he's the main character," describes how Fredin tormented two women—Catherine

---

[3] To set forth a *prima facie* case for copyright infringement, Fredin would, at minimum, need to identify a specific work, allege he owns it, show it was registered, and specify the acts of infringement. *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994); *see also Adventure Creative Grp., Inc. v. CVSL, Inc.*, No. 16-cv-2532, 2019 U.S. Dist. LEXIS 155545, at *6 (D. Minn. Sept. 12, 2019) (registration is prerequisite to suit); *Warner Bros. Entm't, Inc. v. X One X Prods.*, 644 F.3d 584, 595 (8th Cir. 2011) (listing *prima facie* elements of copyright claim). He does none of this.

[4] "[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his cause of action shows that it is based upon those laws of that Constitution." *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) (jurisdiction lacking); *accord Green v. All Wheels Fin. Inc.*, No. 17-cv-3714 (MJD/FLN), 2018 U.S. Dist. LEXIS 54772, at *6-8 (D. Minn. Mar. 29, 2018) (same); *see also supra* n.3.

4

Schaefer and Grace Elizabeth Miller[5]—prompting them to obtain harassment restraining orders ("HROs") against him. Compl. Ex. 1. The HROs are attached to the Walker Declaration as Exhibits B and C. In addition to the HROs, the Report relied heavily upon Schaefer's June 29, 2016, Affidavit and Petition for HRO (the "Schaefer Affidavit") and a Minnesota Court of Appeals decision affirming the HRO that Miller sought and obtained (the "Miller Order"). The Schaefer Affidavit and the Miller Order are attached to the Walker Declaration, respectively, as Exhibits D and E, and Defendants have added consecutive page numbers to the Schaefer Affidavit for the Court's convenience.[6]

Fredin takes particular umbrage at statements in the Report that he contacted Schaefer "dozens of times by unfamiliar cell phone numbers and online dating profiles" and that he sent Miller "sexually suggestive" messages. Am. Compl. ¶¶ 1, 14, 17, 18, 49-50, 58. Although his Amended Complaint is not a model of clarity, he also appears to identify the following statements as false and defamatory:

- That Schaefer "canceled" her date with Fredin and "told Fredin to stop contacting her," *id.* ¶ 15;

- That Schaefer "took to Facebook, detailing how a guy she'd never met was haunting her. A friend shared her post. Another Twin Cities woman soon reached out. Schaefer wasn't Fredin's only victim," *id.*;

- That this other woman (Miller) "coached Schaefer" into "getting her own" restraining order," *id.*;

- That "Fredin tacitly created 'profiles posted under their names on datingpscyhos.com,'" *id.*; and

---

[5] The Report uses Schaefer's name, but not Miller's name.

[6] As discussed above, *see supra* note 1, the Court may take judicial notice of HROs, the Schaefer Affidavit, and the Miller Order.

- That Fredin engaged in "improper conduct involving his 'software engineering' profession," *id.*

## ARGUMENT

To survive a motion to dismiss, a complaint must state a claim for relief "'that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts take all of the facts alleged in the complaint as true for purposes of the motion, but the complaint "must provide more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to survive a motion to dismiss. *E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 962 (D. Minn. 2018) (quoting *Iqbal*, 556 U.S. at 678); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The face of the Amended Complaint makes clear that Fredin's lawsuit is time barred. Even if his lawsuit were timely, his Amended Complaint, like his original Complaint, fails to state a claim upon which relief could be granted. The Court should therefore dismiss Fredin's lawsuit with prejudice.

**I. Fredin's lawsuit should be dismissed with prejudice because it is time barred.**

This Court needs to read only one Eighth Circuit decision to dispose of this lawsuit: *Larsen v. Mayo Medical Center*, 218 F.3d 863 (8th Cir. 2000).

As that case explains, where federal jurisdiction is based on diversity, as it is here, "Minnesota's substantive law, including its statute of limitations, applies." *Id.* at 866. Moreover, "state commencement rules apply because they are 'part and parcel of the statute of limitations.'" *Id.* at 867.

> In Minnesota, a civil action is commenced—
>
> (a) when the summons is served upon that defendant; or
>
> (b) at the date of signing of a waiver of service pursuant to Rule 4.05; or
>
> (c) when the summons is delivered to the sheriff in the county where the defendant resides for service; but such delivery shall be ineffectual unless within 60 days thereafter the summons is actually served on that defendant or the first publication thereof is made.

Minn. R. Civ. P. 3.01, *cited in Larsen*, 218 F.3d at 867 (analyzing an earlier version of Rule 3.01); *see also Wallin v. Minn. Dep't of Corr.*, 598 N.W.2d 393, 400 (Minn. Ct. App. 1999) (action is commenced in a Minnesota action when the summons is served upon the defendant). Although the federal rules control service of process and permit waiver of service of the summons, "if the defendant does not waive service, service has not been effected." *Larsen*, 218 F.3d at 867-68.

In Minnesota, a defamation action must be commenced within two years of publication. Minn. Stat. § 541.07(1); *Wild v. Rarig*, 234 N.W.2d 775 (Minn. 1975).[7]

The same is true for Fredin's other intentional tort claims. *See* Minn. Stat. § 541.07(1) (codifying two-year statute of limitations for any "other tort resulting in

---

[7] Although he admits that "the events that gave rise to this action occurred in this Judicial District," Am. Compl. ¶ 4, Fredin simultaneously claims that Wisconsin law, and its three-year statute of limitations, applies to his defamation claim, *id.* ¶¶ 1, 5 & n.1.

This is a legal conclusion and, moreover, an erroneous one. *See Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1394 (8th Cir. 1997) (finding Minnesota, not Texas, law applied to defamation claim, in part because statements "were made in Minnesota to a local newspaper, were first published in Minnesota, and involved the performance of contracts that the parties had agreed would be governed by Minnesota law"); *id.* ("[a]lthough the statements were subsequently republished in Texas, it is unlikely that Northwest expected Texas law to apply to statements made to a newspaper in Minnesota"); *Patch v. Playboy Enters., Inc.*, 652 F.2d 754, 756-57 (8th Cir. 1981) (applying Illinois' shorter statute of limitations to defamation suit brought in Missouri court by Missouri resident against Illinois-based publication; explaining decision as necessary to avoid forum shopping).

personal injury"); *Christenson v. Argonaut Ins. Cos.*, 380 N.W.2d 515, 518 (Minn. Ct. App. 1986) (two-year statute of limitations governs actions for IIED); *Rolfshus v. Time*, No. 756161, 5 Media L. Rep. 1443 (Henn. Cty. Dist. Ct., June 14, 1979), attached as Exhibit F to Walker Declaration (two-year statute of limitations governs privacy claims).

And because Fredin's NIED and negligence claims are predicated on his time-barred defamation claim, they too are time-barred. *See Wallin*, 598 N.W.2d at 406 (dismissing NIED claim based on defamation claims that were either time-barred or barred by qualified privilege), *cited in Jones v. Indep. Sch. Dist. No. 720*, No. C9-02-1205, 2003 Minn. App. LEXIS 350, at *8-9 (Minn. Ct. App. Apr. 1, 2003) ("[I]f the predicate tort is barred by the statute of limitations or by qualified immunity, the NIED claim cannot survive."); *see also Covey v. Detroit Lakes Printing Co.*, 490 N.W.2d 138, 144 (Minn. Ct. App. 1992) (same).

Indeed, the law is very clear that a plaintiff cannot end-run the strictures of defamation law by labeling her claims something else. As the Fourth Circuit explained in a decision affirmed by the Supreme Court: "[R]egardless of the specific tort being employed, the First Amendment applies when a plaintiff seeks damages for reputational, mental, or emotional injury allegedly resulting from the defendant's speech." *Snyder v. Phelps*, 580 F.3d 206, 218 (4th Cir. 2009), *aff'd*, 562 U.S. 443 (2011).[8]

---

[8] *See also Snyder*, 562 U.S. at 451 ("The Free Speech Clause of the First Amendment . . . can serve as a defense in state tort suits, including suits for intentional infliction of emotional distress."); *Hustler Magazine v. Falwell*, 485 U.S. 46, 56-57 (1988) (noting that when the First Amendment protects speech for libel purposes, it generally insulates that speech from an IIED claim); *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984) (similarly protecting against a product disparagement claim); *Time, Inc. v. Hill*, 385 U.S. 374 (1967) (same, for invasion of privacy); *Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union, Local 655*, 39 F.3d 191, 196 (8th Cir. 1994) (same, tortious interference);

Thus, Fredin needed to commence his suit on or before February 21, 2019—within two years after publication of the Report.[9] However, he did not commence suit until August 2019 when the Sheriff served the summons upon *City Pages* (on August 12) and upon Mullen (on August 15).[10] Fredin was six months too late. His claims are time-barred and should be dismissed with prejudice for this reason alone.

## II.     Even if his lawsuit is not time barred, Fredin cannot state and has not stated a claim for defamation.

Even if Fredin had commenced this action in time, his lawsuit would still be subject to dismissal under Fed. R. Civ. P. 12(b)(6). To state a defamation claim, Plaintiff must plead: "(1) a false and defamatory statement about the plaintiff; (2) an unprivileged publication to a third party; (3) a tendency to harm the plaintiff's reputation in the community; and (4) fault amounting to at least negligence." *Stepnes v. Ritschel*, 663 F.3d

---

*Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192-93 & n.2-3 (9th Cir. 1989) (same, IIED and false light); *Glenn v. Daddy Rocks, Inc.*, 171 F. Supp. 2d 943, 949 (D. Minn. 2001) (same, tortious interference); *Moldea v. New York Times Co.*, 793 F. Supp. 338 (D.D.C. 1992) (same, false light invasion of privacy, breach of contract, promissory estoppel, negligent misrepresentation, and interference with prospective business relations), *aff'd*, 22 F.3d 310 (D.C. Cir. 1994); *Dairy Stores, Inc. v. Sentinel Publ'g Co.*, 191 N.J. Super. 202, 217 (Law Div. 1983) ("[A] party who claims that its reputation has been damaged by a false statement cannot circumvent the strictures of the law of defamation . . . by labeling its action as one for negligence."), *aff'd*, 198 N.J. Super. 19 (App. Div. 1985).

[9] Minnesota has adopted the "single publication rule," which provides that the statute of limitations begins running when an allegedly defamatory report is first published. *Church of Scientology of Minn. v. Minn. State Med. Assoc. Found.*, 264 N.W.2d 152, 155 (Minn. 1978); *see also Shepard v. TheHuffingtonPost.Com, Inc.*, 509 F. App'x 556, 556 (8th Cir. 2013) (per curiam) (affirming dismissal of complaint asserting defamation claims based on an article first published on the internet more than two years before this action was commenced).

[10] It is not clear to Defendants precisely when Fredin delivered the summons to the Sheriff, but it must have been sometime after April 25, 2019 (when the Court ordered him to complete and submit Form USM-285 for each Defendant, *see* ECF No. 11) and before May 30, 2019 (when waiver of service forms were mailed to Defendants, *see* ECF No. 14). Regardless, it does not matter, for two reasons: (1) the Sheriff did not actually serve the Defendants with the summons within 60 days of receipt as required by Minn. R. Civ. P. 3.01(c), and (2) even if the Sheriff had done so, delivery of the summons to the Sheriff after February 21, 2019, was untimely.

952, 963 (8th Cir. 2011) (citing *Britton v. Koep*, 470 N.W.2d 518, 520 (Minn. 1991)); *see also Weinberger v. Maplewood Review*, 668 N.W.2d 667, 673 (Minn. 2003). It is not necessary for the Court to reach the merits of Fredin's defamation claim. But to the extent it does, that claim fails for a host of reasons.[11]

Reading Fredin's Amended Complaint liberally, his defamation claim is based on, at most, seven statements:

- That he contacted Schaefer "dozens of times by unfamiliar cell phone numbers and online dating profiles," Am. Compl. ¶¶ 1, 14, 17, 18, 49;

- That he sent Miller "sexually suggestive" messages, *id.* ¶¶ 1, 14, 50, 58;

- That Schaefer "canceled" her date with Fredin and "told Fredin to stop contacting her," *id.* ¶ 15;

- That Schaefer "took to Facebook, detailing how a guy she'd never met was haunting her. A friend shared her post. Another Twin Cities woman soon reached out. Schaefer wasn't Fredin's only victim," *id.*;

- That this other woman (Miller) "coached Schaefer" into "getting her own" restraining order," *id.*;

- That "Fredin tacitly created 'profiles posted under their names on datingpscyhos.com,'" *id.*; and

---

[11] Although Defendants rely here upon Minnesota law, Fredin's claims would also fail on their merits in the unlikely event the Court determines that Wisconsin law governs. *See* Wis. Stat. § 895.05(1) (codifying fair report privilege); *Torgerson v. Journal/Sentinel, Inc.*, 563 N.W.2d 472, 477 (Wis. 1997) (reciting elements of a defamation action in Wisconsin); *see also John v. Journal Commc'ns, Inc.*, 801 F. Supp. 210, 212-13 (E.D. Wis. 1992) (inaccuracy does not amount to falsity where the substance, gist and sting of the accusation is true); *Tatur v. Solsrud*, 498 N.W.2d 232, 233-34 (Wis. 1993) ("[A] communication is defamatory if it tends so to harm the reputation of another as to lower him [or her] in the estimation of the community or deter third persons from associating or dealing with him [or her]." (quoting RESTATEMENT (SECOND) OF TORTS § 559 (1977))); *Lathan v. Journal Co.*, 140 N.W.2d 417, 423 (Wis. 1966) ("Truth is a complete defense to a libel action," and "[a]ll that is required is that the statement be substantially true."); *Maguire v. Journal Sentinel, Inc.*, 605 N.W.2d 881, 885 (Wis. Ct. App. 1999) (noting that a number of challenged statements had been dismissed pursuant to statutory fair report privilege).

10

- That Fredin engaged in "improper conduct involving his 'software engineering' profession," *id.*

Some of the statements Fredin admits are true.[12] For example, he does not deny that he is a software engineer, and his attorney stated at his criminal sentencing that he is a computer programmer. *See id.* ¶ 15; Sentencing Hr'g at 22:13-14. Nothing in the Report accuses him of misusing this degree; rather, it merely states that he identified himself as a software engineer in a complaint he filed against Schaefer. Compl. Ex. 1. Fredin also does not deny that both Schaefer and Miller were named in profiles on datingpscyhos.com. He denies responsibility for those profiles, *see* Am. Compl. ¶ 15, but again, the Report never says that he posted them. *See* Compl. Ex. 1. Fredin admitted at his sentencing that Schaefer and Miller were in contact about the restraining orders they obtained against him. *See* Sentencing Hr'g at 27:13-16. And he alleged in a separate defamation action he brought in this Court against Schaefer and Miller that Schaefer "post[ed] false statements about him on the Internet . . . and harass[ed] him by encouraging other individuals to seek [HROs] against him." *Fredin v. Miller*, No. 18-cv-466, 2018 U.S. Dist. LEXIS 209525, at *2 (D. Minn. Oct. 17, 2018), *adopted* 2018 U.S. Dist. LEXIS 208361 (Dec. 11, 2018).

A number of the challenged statements are not defamatory. "Words are defamatory when they tend to injure the plaintiff's reputation and expose the plaintiff to

---

[12] Beyond what Fredin admits, Defendants' position is that all statements in the Report are true or substantially true, and their decision at this juncture to focus on Fredin's failure to adequately and plausibly plead other elements of his case should in no way be construed as an admission that any of the challenged statements are false.

11

public hatred, contempt, ridicule, or degradation." *Church of Scientology*, 264 N.W.2d at 155. Even if Fredin is not a software engineer/computer programmer, it is not defamatory to refer to him as such, which is all the Report did. Likewise, it is not defamatory of Fredin to say that a woman canceled a date with him, told him to stop contacting her, posted about him on Facebook, and was in touch with another woman about him. *See, e.g.*, Prosser and Keeton on Torts § 111 at 775 (5th ed. 1984) (stating that some "element of personal disgrace [is] necessary for defamation; . . . the fact that the plaintiff finds it unpleasant and offensive is not enough."); 1 Robert D. Sack, Sack on Defamation: Libel, Slander, and Related Problems § 2:4.1 (5th ed. 2017) ("There is common agreement that a communication that is merely unflattering, annoying, irksome, or embarrassing, or that hurts only the plaintiff's feelings, is not actionable.").

Finally, any remaining statements are based on the Schaefer Affidavit and the Miller Order and are privileged (regardless of their truth/falsity) as a fair and accurate report of judicial proceedings. *See Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 332 (Minn. 2000). Indeed, in the separate defamation action Fredin brought in this Court against Miller, Magistrate Judge Hildy Bowbeer noted that the fair report privilege "would protect statements by Mullen, as the reporter," even if it would not protect his sources' statements to him. *Fredin v. Miller*, 2018 U.S. Dist. LEXIS 209525, at *14.

Specifically, the Schaefer Affidavit contains the following allegations that support statements in the Report:

- "Brock has been messaging me since January of 2014. I have received multiple messages from different profiles . . . . I have also received texts

> from numbers that I do not recognize, all saying the same thing indicating that it is him." Schaefer Affidavit at 2; *see also id.* at 16-17.

- After Schaefer told Fredin to stop and decided to file a police report, he continued to text her repeatedly from December 2014 through August 2015. *Id.* at 3; *see also id.* at 17-18.

- Fredin published a profile on datingpscychos.com that included Schaefer's name and location. *Id.*; *see also id.* at 10-11.

To say that Fredin contacted Schaefer "dozens of times by unfamiliar cell phone numbers and online dating profiles" is a fair and accurate abridgement of her affidavit.

Likewise, the Miller Order details how Fredin sent Miller what he referred to as "a hot photo of what you can't have" and also a photograph of a woman in lingerie with the message, "[t]oo bad you aren't in this tonight on your knees thinking of me." *See* Miller Order at *2-3. Such messages are undeniably "sexually suggestive." The Miller Order also details how Fredin "circumvent[ed]" Miller's attempts to block his communications by sending text messages from at least three unknown numbers and by communicating through PayPal.com, and it notes the district court's finding that "Fredin continually contacted Miller using email, text messages, and telephone after Miller blocked his communication by Facebook and phone." *Id.* at *5-9.

The purpose of the fair report privilege is "to ensure that the public interest is served by the dissemination of information about events occurring at public proceedings and public meetings." *Moreno*, 610 N.W.2d at 331. As the *Moreno* court stated,

> The privilege rests on two basic principles. First, because the meeting was public, a fair and accurate report would simply relay information to the reader that she would have seen or heard herself were she present at the meeting. The second principle is the obvious public interest in having public affairs made known to all.

13

*Id.* (internal quotation marks and citations omitted). The fair report privilege applies here and Fredin has not shown—and cannot show—that Defendants abused or lost it by failing to fairly summarize the contents of the Schaefer Affidavit and Miller Order. For all of these reasons, his defamation claim fails.

### III. Fredin's other claims—for IIED, NIED, Appropriation, Publication of Private Facts, and Negligence—also fail on the merits.

As discussed above, Counts 2-6 in Fredin's Complaint are derivative of his defamation claim and—because that claim fails both on the merits and as time-barred—his other claims fail, too. Fredin cannot end-run the high burden he faces in suing over speech by calling his claim something else. *See supra* n.8 and accompanying text. In addition, each of his other claims should be dismissed for the independent reason that he has failed to plausibly plead essential elements of those claims.

With regard to Fredin's privacy claims for appropriation (Count 4) and publication of private facts (Count 5), "an invasion of privacy claim based on allegations of harm caused by a media defendant's publication of facts obtained from public official records of a criminal proceeding is barred by the First Amendment to the United States Constitution." *Gates v. Discovery Commc'ns*, 101 P.3d 552, 562 (Cal. 2004), *cited in Danforth v. Star Tribune Holdings Corp.*¸ No. A10-128, 2010 Minn. App. Unpub. LEXIS 1080, at *13, 39 Media L. Rep. 1068 (Minn. Ct. App. Nov. 2, 2010) (internal quotation marks and citations omitted).

Beyond this game-ending statement of the law, "[t]o tortiously appropriate an individual's name, one must appropriate for the *purpose* of taking advantage of that

14

individual's name, or reputation." *Kovatovich v. K-Mart Corp.*, 88 F. Supp. 2d 975, 986-87 (D. Minn. 1999) (appropriation requires intent). Appropriation simply is not a proper cause of action against these Defendants—a newspaper and its reporter who used Fredin's name and likeness for the *purpose* of informing the public about a matter of public interest and concern. *See Matthews v. Wozencraft*, 15 F.3d 432, 436 (5th Cir. 1994) (holding that appropriation claims cannot involve a defendant who appropriates a plaintiff's name for a newsworthy purpose), *cited with approval in Kovatovich*, 88 F. Supp. 2d at 987.[13] It makes no difference that *City Pages* generates revenue through advertising sales. *See, e.g.*, *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) ("If a profit motive could somehow strip communications of the otherwise available constitutional protection, our cases from *New York Times* to *Hustler Magazine* would be little more than empty vessels."); *Leidholdt v. L.F.P. Inc.*, 860 F.2d 890, 895 (9th Cir. 1988) ("The fact that Hustler Magazine is operated for profit does not extend a commercial purpose to every article within it."); RESTATEMENT (SECOND) OF TORTS § 652C, cmt. d ("The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough

---

[13] *See also In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1282 (9th Cir. 2013) ("[L]iability will not lie . . . for the use of a name, voice, signature, photograph, or likeness in connection with any news . . . account." (internal marks and citations omitted)); *Campbell v. Seabury Press*, 614 F.2d 395, 397 (5th Cir. 1980) (recognizing the "privilege to publish or broadcast news or other matters of public interest" as applicable to invasion of privacy torts); *Baugh v. CBS, Inc.*, 828 F. Supp. 745, 753 (N.D. Cal. 1993) (if the use of a plaintiff's likeness was in connection with a news account, then no liability may be found for appropriation); *Pierson v. News Grp. Publ'ns, Inc.*, 549 F. Supp. 635, 642 (S.D. Ga. 1982) (dismissing appropriation claim based on tabloid article about POW training where plaintiff failed to show what value was attributable to his likeness); *J.C. v. WALA-TV, Inc.*, 675 So. 2d 360 (Ala. 1996) (recognizing "legitimate public interest" exception to commercial appropriation tort liability).

to make the incidental publication a commercial use of the name or likeness. Thus a newspaper, although it is not a philanthropic institution, does not become liable . . . to every person whose name or likeness it publishes.").

Meanwhile, a publication of private facts tort occurs "when one 'gives publicity to a matter concerning the private life of another . . . if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.'" *Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 233 (Minn. 1998), (quoting RESTATEMENT (SECOND) OF TORTS, §652D). Plaintiff has not pleaded (nor can he) any of the elements of an invasion-of-privacy tort based on the publication of private facts.

First, behavior recounted in the Report recites facts that were already in the public record as a result of the Schaefer Affidavit and the Miller Order. *See Danforth*, 2010 Minn. App. Unpub. LEXIS 1080, at *13 ("The statements of which appellant complains did not concern his private life: every fact mentioned in the article is already in the public record of appellant's criminal trial and the subsequent appellate decision."). Second, Defendants' further publication of these already public facts was not "highly offensive to a reasonable person." Rather, it is Fredin's "deranged, narcissistic" and "cruel, twisted" behavior, *see* Sentencing Hr'g at 32-33, that is highly offensive. *See Danforth*, 2010 Minn. App. Unpub. LEXIS 1080, at *13-14 ("Additionally, while appellant's behavior might be highly offensive to a reasonable person, the publication of that behavior, after appellant has been convicted for it, is not offensive."). And third, the Report addressed a matter of legitimate concern to the public—Fredin's harassment of unsuspecting women.

*McNally v. Pulitzer Publ'g Co.*, 532 F.2d 69, 78-79 & n.13 (8th Cir. 1976) (noting that complaints concerning crime have been held to be matters of proper public concern); *Hardge-Harris v. Pleban,* 741 F. Supp. 764, 776 (E.D. Mo. 1990) (noting that the operation of laws is "within the public interest") (quotation marks and citation omitted).

Finally, Fredin's other claims also fail on the merits:

*Count 2: IIED*—To plead an IIED claim, Fredin must allege (1) extreme and outrageous conduct (2) that is intentional or reckless (3) that causes emotional distress, and (4) that the emotional distress is severe. *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983). Fredin's complaint fails to plausibly state an IIED claim. Although his Complaint states many conclusory allegations, nowhere does he plausibly allege facts that these Defendants—a publication and a journalist whose purpose was to inform the public—intended to cause severe emotional distress or that they had any knowledge that it was substantially certain or highly probable that severe emotional distress would ensue. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1224 (10th Cir. 2007) (television broadcast containing confidential undercover officers' identities was not extreme and outrageous conduct); *Mayes v. Lin Television of Texas, Inc.*, No. 3:96-CV-0396-X, 1998 U.S. Dist. LEXIS 15088, at *16-17 (N.D. Tex. Sept. 22, 1998) (publication of "truthful, albeit embarrassing, information" is not extreme and outrageous conduct). Additionally, as set forth above, the Report was a fair and accurate report of public court documents and therefore not highly offensive, and Fredin cannot plausibly allege that any emotional distress he suffers arose from the Report rather than from his conviction and sentence and/or from the "abuse" he claims to have suffered at

17

the hands of Miller. *See* Sentencing Hr'g at 26 (stating Miller had "killed [him]," "raped [his] identity," and "destroyed [his] life").

*Count 3: NIED*—Under Minnesota law, NIED has three distinct elements: (1) the plaintiff was within a zone of danger of physical impact; (2) the plaintiff reasonably feared for his own safety; and (3) the plaintiff suffered severe emotional distress with attendant physical manifestations. *Stead-Bowers v. Langley*, 636 N.W.2d 334, 343 (Minn. Ct. App. 2001) (citing *K.A.C. v. Benson*, 527 N.W.2d 553, 557 (Minn. 1995)). Even if Fredin could demonstrate that he was the victim of defamation (he has not and cannot), he has failed to allege any physical manifestations of his purported emotional distress. *See Larson v. Minn. Dep't of Human Servs.*, No. A17-1887, 2018 Minn. App. Unpub. LEXIS 436, at *19 (Minn. Ct. App. May 21, 2018) ("Emotional distress alone is not sufficient to show a physical injury."). As a result, his NIED claim must be dismissed. *See, e.g.*, *Doku v. Hennepin Health Care Sys.*, No. 09-353, 2009 U.S. Dist. LEXIS 47894 (D. Minn. June 4, 2009) (dismissing NIED claim for failing to allege physical manifestation of emotional distress).

*Count 6: Negligence*—A libel claim against a media defendant requires a showing of fault (at least negligence), *see, e.g.*, *Stepnes*, 663 F.3d at 964, and so Fredin's independent negligence claim is superfluous. Further, as a matter of law, it was not negligent for Defendants to rely on official judicial records when publishing the Report. *See, e.g.*, *Wiley v. Ohio/Oklahoma Hearst- Argyle Television, Inc.*, 33 F. App'x 434, 437 (10th Cir. 2002) (affirming summary judgment for journalist who relied on official police statements); *Garza v. Hearst Corp.*, No. SA-94-CA-0388, 1995 U.S. Dist. LEXIS 22346,

18

at *11 (W.D. Tex. 1995) (granting summary judgment to newspaper that relied on photographic identification of plaintiff provided by sheriff's office); *O'Connell v. Housatonic Valley Publ'g Co.*, No. 0055284, 1991 Conn. Super. LEXIS 2749, at *7 (Conn. Super. Ct. Nov. 27, 1991) (granting summary judgment to newspaper on NIED claim because "the First Amendment will not allow 'exposing the press to liability for . . . truthfully publishing information released to the public in official court records." (quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 496 (1975))).

## CONCLUSION

Defendants *City Pages* and Mike Mullen respectfully request that the Court grant its motion and that Fredin's claims be dismissed with prejudice.

Dated: October 29, 2019

**BALLARD SPAHR LLP**

By: *s/ Leita Walker*
Leita Walker (387095)
walkerl@ballardspahr.com
Christopher M. Proczko (392419)
proczkoc@ballardspahr.com
2000 IDS Center
80 S. 8th St.
Minneapolis, MN 55402
Tel: 612.371.3211

**ATTORNEYS FOR DEFENDANTS**