UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Brock Fredin,<br><br>             Plaintiff,<br>v.<br><br>City Pages & Michael Mullen,<br><br>             Defendants. | Case No.: 19-cv-472 (DWF/TNL)<br><br>**DECLARATION OF LEITA WALKER IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO DISQUALIFY AND STRIKE AFFIRMATIVE DEFENSES** |

I, Leita Walker, declare as follows:

1.     I am a partner with the law firm of Ballard Spahr LLP, 2000 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota 55402 ("Ballard"). I am licensed to practice law in the State of Minnesota and am admitted to practice before this Court. I am counsel for Defendants Mike Mullen and *City Pages*, a publication of Star Tribune Media Company LLC ("Star Tribune"). This declaration is based on my personal knowledge, my discussions with certain attorneys currently practicing law at Ballard, and records maintained by Ballard in the usual course of business. If sworn as a witness, I am competent to testify to the facts stated herein.

2.     Ballard's Minneapolis office is comprised largely of attorneys who previously practiced at a law firm called Lindquist & Vennum ("Lindquist"). Ballard acquired Lindquist in January 2018.

3.     I have represented Star Tribune Media Company LLC and its journalists in content and access-related litigation since I began practicing law in 2006 as an associate at Faegre & Benson LLP—now known as Faegre Baker Daniels LLP ("Faegre").

4. I practiced at Faegre, first as an associate and then as a partner, for more than twelve years. On December 31, 2018, I withdrew from the partnership at Faegre. On January 2, 2019, approximately one year after the Ballard-Lindquist merger, I joined the partnership at Ballard, where I continue to represent Star Tribune, its journalists, and other clients in the media and entertainment industry.

5. I first learned of Brock Fredin's lawsuit against *City Pages* and its reporter Mr. Mullen (collectively "Defendants") on February 27, 2019, two days after Mr. Fredin filed his Complaint with this Court. This was also the first I learned of the news report at issue, having never before read it or spoken to Defendants about it or about Mr. Fredin.

6. Although Mr. Fredin had not yet served Defendants, Star Tribune retained me as defense counsel in the matter. I assigned Christopher Proczko, an associate in Ballard's Media & Entertainment Group, to assist me in handling this matter and we began monitoring the docket.

7. Before I began representing Defendants in this matter, I had Ballard's conflicts group run a check to determine whether Ballard would have any potential conflicts arising from its representation of Defendants in this matter. The conflicts check did not disclose any previous representation or relationship that presented a potential conflict of interest.

8. As part of the conflict-checking process, I learned for the first time that Ballard was representing clients in other matters adverse to Mr. Fredin. Specifically, I learned that my colleague Adam Ballinger had been representing Lindsey Middlecamp, Catherine Schaefer, and Grace Miller on a *pro bono* basis since on or before March 15,

3

2018, in separate libel lawsuits Mr. Fredin had filed against them. *See also* Fredin Declaration (Dkt. 63) Ex. C.

9. I have spoken with Mr. Ballinger occasionally about the status of the various lawsuits Mr. Fredin has brought against Ballard's clients and about Mr. Fredin and his litigation tactics.

10. None of my communications with Mr. Ballinger or anyone else at Ballard gave me reason to believe that Mr. Fredin believed or had ever alleged that Ballard was somehow conflicted out of being adverse to him on the ground that attorneys associated with Lindquist and/or Ballard had previously mediated disputes involving Mr. Fredin.

11. As of the date of filing this declaration, Mr. Fredin has *not* moved to disqualify Mr. Ballinger or our firm from representing Ms. Middlecamp, Ms. Schaefer, and Ms. Miller in his lawsuits against them.

12. As discussed in Defendants' brief in support of its motion to dismiss (Dkt. 33), Defendants did not receive formal service of the Complaint and Summons in this lawsuit until August 2019.

13. I appeared in the case shortly thereafter, on September 3, 2019, by filing a motion to dismiss on behalf of Defendants (Dkt. 19). Mr. Proczko also appeared in the case.

14. Mr. Fredin did not object to Ballard's representation of Defendants at this time. Instead, on September 24, 2019, Mr. Fredin filed his First Amended Complaint.

DMNorth #7083055 v2

15. The first notice I had that Mr. Fredin believed Ballard was somehow "conflicted out" of representing Defendants was on October 16, 2019, when I received service of his Rule 11 motion for sanctions. In a footnote in his supporting brief (later prematurely filed at Dkt. 49) he alleged that "Many Lindquist and now Ballard partners served as 'mediators' including Michael Olafson and Mark XXX in each state court HRO proceeding involving the named parties in Defendants phony article. Ballard Spahr has a conflict of interest in even representing the Star Tribune, Lindsey Middlecamp, Catherine Schaefer, or Grace Miller. Lindquist/Ballard is also financing a harassment campaign to offer *pro bono* lawyers to cover up Lindsey Middlecamp's actions in other cases."

16. This was the first I had heard the allegation that legacy Lindquist attorneys had served as mediators in a dispute involving Mr. Fredin. I immediately began to investigate Mr. Fredin's allegations. Consistent with firm policy, I also notified Ballard's general counsel. The firm's deputy general counsel helped me with the investigation of Mr. Fredin's allegations so that, in the event the investigation revealed that the firm was in possession of any confidential information of Mr. Fredin, such information would not be inadvertently exposed to either Mr. Proczko or me.

17. The investigation determined that Mr. Fredin's allegations were unfounded.

18. Lindquist encouraged its lawyers to do *pro bono* work, and it created a spreadsheet to describe the various *pro bono* opportunities available to them. This spreadsheet included the Ramsey County mediation program and described the program this way:

> Mediations are between parties in Ramsey County Harassment Court. Parties are offered mediation to attempt resolution prior to a trial. Mediator must be trained in mediation and continue on-going mediation skills training, but need not have Rule 114 certification with appropriate experience. Mediation involves interviewing parties, fact gathering, and negotiation. Diversity, cultural competency, some foreign language exposure are desired but not required. Mediators do not represent any party to the mediation.

It bears noting that this volunteer mediation program was exclusively for *harassment* cases, not libel cases such as those Mr. Fredin subsequently brought against the victims of his harassment and Defendants here.

19. Lindquist attorneys Michael Olafson and Mark Jacobson did volunteer as mediators for Ramsey County court on dates on which Mr. Fredin's matters were listed on the court's docket. Specifically, Mr. Olafson served as a mediator on August 18, 2016, and January 4, 2018, and Mr. Jacobson served as a mediator on May 4, 2017.

20. However, there is no record that Mr. Olafson or Mr. Jacobson mediated any of Mr. Fredin's matters, and there is no record that any confidential information belonging to Mr. Fredin was ever in either Lindquist's or Ballard's possession, custody, or control.

21. In fact, in Ballard's investigation, Mr. Olafson advised the firm that he had no recollection of mediating any matter involving Mr. Fredin. Likewise, Mr. Jacobson advised the firm that he had no recollection of mediating any matter involving Mr. Fredin.

22. Regardless, the practice of both Mr. Olafson and Mr. Jacobson was to destroy notes they took (if any) or documents they received (if any) during the mediations

for which they volunteered. Neither maintained mediation-related files personally or at Lindquist. Separately Ballard has confirmed that it has no files concerning any mediation conducted by Mr. Olafson or Mr. Jacobson, much less any file concerning a mediation they conducted involving Mr. Fredin.

23. By the time I joined Ballard on January 2, 2019, Mr. Olafson and Mr. Jacobson were no longer with the firm. Mr. Jacobson had left shortly before the Ballard-Lindquist merger, on December 29, 2017, and Mr. Olafson left Ballard on August 15, 2018, after the Ballard-Lindquist merger.

24. I have been practicing law in the Twin Cities for more than thirteen years and it is possible that I have met Mr. Olafson or Mr. Jacobson in passing at some point in time. However, I have no recollection of ever speaking with them, in person or otherwise. I can say with certainty that I have never spoken with either of them about Mr. Fredin, this lawsuit, or any issue related to this lawsuit. I have not received any information about what transpired at any mediation in which Mr. Fredin was involved from anyone.

25. Mr. Fredin also claims to believe that former Lindquist attorney Lindsey Middlecamp has played some role in the defense of this lawsuit. She has not. Ms. Middlecamp left Lindquist on December 4, 2015, long before it merged with Ballard, long before I joined the firm, and long before Mr. Fredin sued Defendants. Although it is possible I have met Ms. Middlecamp in passing over the past thirteen years, I have no recollection of ever speaking with her, in person or otherwise. I can say with certainty that I have never spoken to her about Mr. Fredin, this lawsuit, or any issue related to this lawsuit.

26. I have never received any confidential information about Mr. Fredin from Mr. Olafson, from Mr. Jacobson, from any other former or current Lindquist or Ballard lawyer, or from anyone else.

27. By the time Mr. Fredin filed his motion to disqualify, Defendants' motion to dismiss and the parties' cross motions for Rule 11 sanctions had been fully briefed and submitted to the Court for decision.

28. To arrive at the present procedural posture of this case, Defendants have incurred thousands of dollars in attorneys' fees. Mr. Proczko and I have spent many hours

   a. investigating Mr. Fredin's allegations against Defendants, his criminal history, official records that served as the basis for *City Pages*' news report, and Mr. Fredin's various other lawsuits;

   b. researching the law in Wisconsin and Minnesota establishing that his claims against Defendants have no merit;

   c. drafting and filing not just one, but two motions to dismiss (the second being necessary because Mr. Fredin amended his complaint after Defendants filed the first); and

   d. drafting and filing a Rule 11 motion for sanctions.

29. Disqualifying Ballard from representing Defendants in this case, at this juncture, would thus be incredibly prejudicial to Defendants. They would need to find and hire new counsel, and they would be responsible for the fees incurred by the new counsel in learning the relevant facts and law that the undersigned already know well.

30. Defendants would be prejudiced for the additional reason that Ballard is one of the most recognized firms in the United States for First Amendment and media law litigation and I am one few lawyers known for defending such litigation in Minnesota.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 23rd day of December, 2019, in Minneapolis, Minnesota.

                                             *s/ Leita Walker*
                                             Leita Walker