## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Brock Fredin,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>City Pages & Michael Mullen,<br><br>　　　　　Defendants. | Case No.: 19-cv-472 (DWF/TNL)<br><br>**DECLARATION OF CHRISTOPHER PROCZKO IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO DISQUALIFY AND STRIKE AFFIRMATIVE DEFENSES** |

I, Christopher Proczko, declare as follows:

1.　　　I am an associate with the law firm of Ballard Spahr LLP, 2000 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota 55402 ("Ballard"). I am licensed to practice law in the State of Minnesota and am admitted to practice before this Court. I am counsel for Defendants Mike Mullen and *City Pages*, a publication of Star Tribune Media Company LLC ("Star Tribune"). This declaration is based on my personal knowledge. If sworn as a witness, I am competent to testify to the facts stated herein.

2.　　　I began working at the law firm of Lindquist & Vennum ("Lindquist") in September 2016. In January 2018, Ballard Spahr LLP ("Ballard") acquired Lindquist and I became a Ballard associate.

3.　　　I first learned of Brock Fredin's lawsuit against *City Pages* and its reporter Mr. Mullen (collectively "Defendants") on or about February 27, 2019, after Mr. Fredin filed his Complaint with this Court. Leita Walker, who had recently joined Ballard, assigned me to help work on this matter. This was also the first I learned of the news

report at issue, having never before read it or spoken to Defendants about it or about Mr. Fredin.

4.      At the time I learned of Mr. Fredin's lawsuit against Defendants, I knew that Adam Ballinger, a partner at Ballard, had been representing Lindsey Middlecamp, Catherine Schaefer, and Grace Miller on a *pro bono* basis since on or before March 15, 2018, in separate libel lawsuits Mr. Fredin had filed against them. *See also* Fredin Declaration (Dkt. 63) Ex. C.

5.      I have spoken with Mr. Ballinger occasionally about the status of the various lawsuits Mr. Fredin has brought against Ballard's clients and about Mr. Fredin and his litigation tactics.

6.      None of my communications with Mr. Ballinger or anyone else at Ballard gave me reason to believe that Mr. Fredin believed or had ever alleged that Ballard was somehow conflicted out of being adverse to him on the ground that attorneys associated with Lindquist and/or Ballard had previously mediated disputes involving Mr. Fredin.

7.      The first notice I had that Mr. Fredin believed Ballard was somehow "conflicted out" of representing Defendants was on October 16, 2019, when I received service of his Rule 11 motion for sanctions. In a footnote in his supporting brief (later prematurely filed at Dkt. 49) he alleged that "Many Lindquist and now Ballard partners served as 'mediators' including Michael Olafson and Mark XXX in each state court HRO proceeding involving the named parties in Defendants phony article. Ballard Spahr has a conflict of interest in even representing the Star Tribune, Lindsey Middlecamp, Catherine Schaefer, or Grace Miller. Lindquist/Ballard is also financing a harassment campaign to

2

offer *pro bono* lawyers to cover up Lindsey Middlecamp's actions in other cases."

8.      This was the first I had heard the allegation that legacy Lindquist attorneys had served as mediators in a dispute involving Mr. Fredin.

9.      Around the time I joined the Lindquist firm in 2016, I met both Michael Olafson and Mark Jacobson. I do not recall ever working with Mr. Olafson. I worked with Mr. Jacobson on a few matters unrelated to Mr. Fredin while we were both at Lindquist. I have no recollection of ever speaking with either Mr. Olafson or Mr. Jacobson about Mr. Fredin, this lawsuit, or any issue related to this lawsuit.

10.     I have not received any information about what transpired at any mediation in which Mr. Fredin participated from anyone.

11.     I have never received any confidential information about Mr. Fredin from Mr. Olafson, from Mr. Jacobson, from any other former or current Lindquist or Ballard lawyer, or from anyone else.

12.     Mr. Fredin also claims to believe that Ms. Middlecamp has played some role in the defense of this lawsuit. She has not.

13.     To the best of my recollection, I met Ms. Middlecamp at a networking event in 2015 while she was an associate at Lindquist. I was not practicing at Lindquist at that time. When I joined Lindquist in 2016, Ms. Middlecamp had already left the firm.

14.     Specifically, Ms. Middlecamp left Lindquist on December 4, 2015, long before I joined Lindquist, long before it merged with Ballard, long before Ms. Walker joined Ballard, and long before Mr. Fredin sued Defendants.

15.     I last saw Ms. Middlecamp at an event on November 7, 2019, *after*

Defendants had filed their motion to dismiss Mr. Fredin's First Amended Complaint. I

mentioned the pending lawsuit to her and we had a very brief discussion about Mr.

Fredin's litigious behavior. We did not discuss the specifics of Mr. Fredin's allegations,

the merits of any of his lawsuits, or the nature of the defense in any of his libel lawsuits. I

never spoke to Ms. Middlecamp about Mr. Fredin before Mr. Fredin sued Defendants.

I declare under penalty of perjury that the foregoing is true and correct. Executed

on this 23rd day of December, 2019, in Minneapolis, Minnesota.


                                          *s/ Christopher M. Proczko*
                                          Christopher M. Proczko

DMNorth #7088041 v2