# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Brock Fredin, | No. 19-cv-472 (DWF/TNL) |
| Plaintiff, | |
| | **REPORT** |
| v. | **AND RECOMMENDATION** |
| City Pages and Michael Mullen, | |
| Defendants. | |

Brock Fredin, 1180 7th Avenue, Baldwin, WI 54002 (pro se Plaintiff); and

Christopher Proczko and Mary Andreleita Walker, Ballard Spahr LLP, 80 South Eighth Street, Suite 2000, Minneapolis, MN 55402 (for Defendants).

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendants' Motion to Dismiss the Amended Complaint with Prejudice for Failure to State a Claim under Fed R. Civ. P. 12(b)(6) (ECF No. 31), Defendants' Fed. R. Civ. P. 11 Motion for Sanctions (ECF No. 37), Plaintiff's motion for cross sanctions (ECF No. 46), and Plaintiff's Motion for Leave to File a Second Amended Complaint. (ECF No. 83). These motions have been referred to the undersigned magistrate judge for a report and recommendation to the Honorable Donovan W. Frank, United States District Judge for the District of Minnesota, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. (ECF No. 4). Based on all the files, records, and proceedings herein, and for the reasons set forth below, this Court recommends that the motion to amend be denied; the motion to dismiss be granted; the motions for sanctions be denied; and that Defendants be ordered to

reimburse the U.S. Marshal Service for the reasonable expenses that it incurred in effecting

personal service on Defendants.

## I.   BACKGROUND

Defendant Michael Mullen, a resident of Minnesota, authored an article about

Plaintiff Brock Fredin entitled "Accused Stalker Brock Fredin is Writing a Horror Story

and He's the Main Character." (ECF No. 26, p. 3, 5). Defendant City Pages, a weekly

newspaper owned by Star Tribune Media LLC, published the article in both its print and

online editions. (ECF No. 26, p. 3). Star Tribune Media LLC is registered and

headquartered in Minnesota. (ECF No. 26, p. 3). Plaintiff Brock Fredin has been a resident

of Wisconsin since at least 2017.[1] (ECF No. 26, p. 2).

The article discusses Fredin's interactions with multiple women, including

Catherine Schaefer, who briefly dated Fredin in the Twin Cities in 2014. (ECF No. 26-1,

p. 1). The article also discusses a relationship that Fredin had with an unnamed "Twin

Cities woman" in 2015, as well as Minnesota state court proceedings related to Fredin.

(ECF No. 26-1, pp. 3-4). City Pages published the article on February 22, 2017. (ECF No.

26-1, p. 1).

On February 19, 2019, Fredin mailed both a complaint and an application to proceed

without prepaying fees or costs ("IFP application") to the Clerk of Court. (ECF No. 3). In

his complaint, Fredin alleges the following causes of action: defamation per se, intentional

---

[1] It appears that when Fredin filed suit, he was incarcerated at the Ramsey County Jail in Minnesota. "[T]he traditional rule is that a prisoner does not acquire a new domicile when he is incarcerated in a different state; instead, he retains the domicile he had prior to his incarceration." *Jones v. Hadican*, 552 F.2d 249, 250 (8th Cir. 1977). The Court therefore assumes Fredin was domiciled in Wisconsin at all times relevant to this lawsuit.

infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), appropriation, publication of private facts, and negligence. (ECF No. 26, pp. 9-13). Fredin indicated in his IFP application that he was incarcerated at the time he filed his complaint. (ECF No. 2, pp. 6).

On March 15, 2019 the Court issued an order informing Fredin that his IFP application was deficient and that he needed to pay an initial partial filing fee of $59.05 for the matter to proceed. (ECF No. 5). Fredin paid the fee on April 10, 2019 (ECF No. 10-1) and moved to stay the matter and to adjust his remaining filing fee. (ECF Nos. 6, 9). On April 25, 2019, the Court denied both of Fredin's motions, but granted his application to proceed without prepaying fees and costs. (ECF No. 11). The Court ordered the Clerk of Court to send U.S Marshal Service forms to Fredin for his completion and to seek waiver of service from each Defendant once Fredin returned the completed forms. (ECF No. 11, pp. 2-3). The Court warned that if Defendants failed "without good cause to sign and return a waiver within 30 days," the Court would "impose upon [Defendants] the expenses later incurred in effecting service of process." (ECF No. 11, p. 3). The Clerk of Court sent U.S. Marshal service forms for Fredin to complete on April 26, 2019. (ECF No. 12). The Court received the completed service forms on May 23, 2019.

One week later, the Clerk of Court sent a notice of lawsuit to each Defendant and asked that they waive service by July 1, 2019. (ECF No. 14). In early August, after Defendants had failed to waive service, the Court ordered the Marshal Service to serve each Defendant personally and to submit to the Court the reasonable expenses the Marshal Service incurred in effecting service. (ECF No. 15). The Court again warned Defendants

that, absent a showing of good cause, it would require Defendants to reimburse the Marshal Service for those expenses. (ECF No. 15). The Marshal Service served City Pages on August 12, 2019 and Mullen on August 14, 2019. (ECF No. 18). The Marshal Service incurred expenses of $130 in serving each Defendant. (*Id.*).

Defendants moved to dismiss the complaint on several grounds, including that Fredin's claims were barred by Minnesota's statute of limitations. (ECF Nos. 19, 21). Twenty-one days later, Fredin filed an amended complaint, in which he alleged that his claims were not time barred because they arose under Wisconsin law. (ECF No. 26)

Defendants moved to dismiss the amended complaint. (ECF No. 31). They also moved for sanctions under Federal Rule of Civil Procedure 11, arguing that Fredin acted in bad faith in filing both the original and amended complaint. (ECF No. 37). Fredin also filed a motion for Rule 11 sanctions. (ECF No. 46).

Approximately four months after the second motion to dismiss was filed, Fredin moved to amend the complaint for a second time. (ECF No. 83). This time, Fredin sought leave to amend because he recently obtained materials from the city of St. Paul in response to a "Freedom of Information Act" request that he believed provided additional support for his claims and further justified the adding of two additional individuals as defendants in this matter. The Court took the motions under advisement without a hearing following the completion of briefing.

## II.   ANALYSIS

### A.  Motion to Amend

The Court will begin with Fredin's motion to amend. Once 21 days have passed

after service of a responsive pleading, a party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "Although leave to amend 'shall be freely given when justice so requires,' *see* Fed. R. Civ. P. 15(a), plaintiffs do not have an absolute or automatic right to amend." *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005) (citing *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cor. 2002)). The Court may deny a party's request for leave to amend only "if there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) (quoting *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008)). "[A] motion to amend should be denied on the merits 'only if it asserts clearly frivolous claims or defenses.'" *Becker v. Univ. of Nebraska at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999) (quoting *Gamma–10 Plastics, Inc. v. American President Lines, Ltd.*, 32 F.3d 1244, 1255 (8th Cir. 1994)).

The Court will recommend the motion to amend be denied.[2] At the time Fredin filed his motion to amend, nearly one year had passed since Fredin had filed the original complaint and more than four months had passed since the second motion to dismiss was filed. This alone might justify denial of the motion on the grounds of undue delay. *Platte Valley Wyo-Braska Beet Growers Assn. v. Imperial Sugar Co.*, 100 F. App'x 717, 720

---

[2] Because resolution of the motion to amend could affect resolution of the motion to dismiss, the Court has chosen to include the motion to amend in its report and recommendation to the District Judge.

(10th Cir. 2004) (affirming denial of motion to amend raised two months after motion to dismiss for undue delay). In this case, Fredin has not explained why it took so long to obtain the information he now seeks to incorporate into his proposed amended complaint. Fredin has not identified when he submitted his "Freedom of Information Act" request to St. Paul. Nor has he stated how long it took for the city to respond to his request. Thus, on this record, the Court concludes that Fredin has acted with undue delay in seeking leave to amend his complaint.

In addition, Fredin's proposed amendment would cause Defendants prejudice. Defendants have already twice moved to dismiss this action. The grant of this motion would require them to bear the cost and expense of filing a third set of responsive pleadings. *See Subramanian v. Tata Consultancy Servs. Ltd.*, No. 18-cv-661, 2018 WL 8754121, at *1 (D. Minn. Aug. 6, 2018) (denying motion to amend filed after motion to dismiss because the defendants would be forced to bear costs and expense of filing a third set of responsive pleadings). Furthermore, as set forth below, the Court is recommending the motion to dismiss be granted on the grounds that Fredin's claims are barred by the statute of limitations. Though Fredin was aware Defendants were seeking to dismiss on the grounds that his claims were time-barred, he does not argue that his proposed amended complaint contains new facts and allegations that would affect the arguments the parties made regarding the statute of limitations.[3] Thus, Defendants would also be prejudiced if forced to file a third set of motion papers, particularly when the outcome of that motion would be

---

[3] He does, however, argue that his proposed amended complaint contains facts and allegations that negate other arguments that Defendants made in their motion to dismiss.

the same as the recommendation set forth below.[4]

### B. Motion to Dismiss

Defendants have moved for dismissal under Federal Rule of Civil Procedure 12(b)(6). In deciding a Rule 12(b)(6) motion, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). In doing so, the court must draw reasonable inferences in the plaintiff's favor. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sletten & Brettin Orthodontics v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015) (citation and internal quotations omitted). Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Although a sufficient complaint need not be detailed, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). Complaints are insufficient if they contain "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In assessing a complaint by a *pro se* plaintiff, the court applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94

---

[4] The Court does not, however, draw any conclusions as to the timeliness or merits of Fredin's claims against the two individuals he seeks to add as defendants in his proposed amended complaint. Thus, the Court does not recommend the motion to amend be denied on futility grounds.

(2007) (*per curiam*) (quotation and citation omitted). "If the essence of an allegation is discernible," then the court, in applying a liberal construction to *pro se* complaints, "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Despite the liberal construal of such complaints, the *pro se* plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d at 914). Thus, *pro se* litigants "must set a claim forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Id.* (quoting *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981)).

### 1. Minnesota law applies to this matter

The parties first dispute whether Minnesota or Wisconsin law applies in this case. This dispute is significant. Because federal jurisdiction here is based upon the diversity of the parties, substantive state law, including the state statute of limitations, applies.[5] *Larsen v. Mayo Medical Center*, 218 F.3d 863, 866 (8th Cir. 2000). Under Minnesota law, actions for defamation and IIED must be commenced within two years of the alleged wrongful act. Minn. Stat. § 541.07(1); *Christenson v. Argonaut Ins. Cos.* 380 N.W.2d 515, 518 (Minn. App. 1986). Under Wisconsin law, defamation and IIED actions need only be commenced within three years of the alleged wrongful act. *See* Wisc. Stat. § 893.57. Thus, Fredin's

---

[5] Fredin also alleged in his amended complaint that the Court had "federal question jurisdiction" because of a copyright claim that he raised (ECF No. 26, p. 2). He later indicated that the reference to a copyright claim was a typographical error. (ECF No. 49, p. 6). Accordingly, the Court concludes it has subject matter jurisdiction over this matter pursuant only to 28 U.S.C. §1332(a)(1).

IIED and defamation claims may be untimely under Minnesota law, but timely under Wisconsin law.

In addition, if Fredin's defamation and IIED claims are untimely, his other claims would fail as well. Though a party may plead a NIED claim by alleging facts that show he or she "suffered mental anguish resulting from a direct invasion of rights, such as when one is defamed," such a claim exists only if the party has a valid defamation claim. *Wallin v. Dep't. of Corrections*, 598 N.W.2d 393, 406 (Minn. App. 1999). As a result, if the Court were to dismiss Fredin's defamation claim, it would also be required to dismiss his NIED claim. *See id*. (dismissing negligent infliction of emotional distress claim because the predicate claims were barred).

Fredin's appropriation, publication, and negligence claims would also fail if the Court were to dismiss his defamation claim. "[A] Minnesota plaintiff is not permitted to avoid defenses to a defamation claim by challenging the defamatory statements under another doctrine." *Guzhagin v. State Farm Mut. Auto. Ins. Co.*, 566 F. Supp. 2d 962, 969 (D. Minn. 2008). As a result, if a claim "stems from" or "grew out of the defamation," the defenses available to a defendant in a defamation action, including the defamation statute of limitations, apply equally to that claim. *See Wild v. Rarig*, 234 N.W.2d 775, 793 (Minn. 1975) (holding a claim for wrongful interference with business relationships was governed by defamation statute of limitations).

In this case, Fredin's appropriation, publication, and negligence claims all stem from his defamation claim. First, as to his appropriation claim, Fredin alleges only that Defendants "appropriated [his] identity, likeness, reputation, social and professional

standing, and prestige to benefit by generating advertisement revenue." (ECF No. 26, p. 11). The only alleged appropriation the Court can identify, however, relates to the publication of the article about him. Second, as to his publication claim, Fredin again alleges only that Defendants "published" private facts and false statements about him. (ECF No. 26, p. 11). Finally, Fredin's negligence claim is based almost entirely on allegations that Defendants failed to investigate and corroborate properly the statements and claims made in the article. (*Id*., pp. 11-12). Because each of these claims resulted from the publication of the allegedly defamatory material, they are subject to the defamation statute of limitations. *Guzhagin*, 566 F. Supp. 2d at 969. As a result, choice of law in this matter could be dispositive to all of Fredin's claims.

To resolve disputes over the choice of law in diversity cases, "a federal court applies the choice of law rules of the forum state. In this case that means Minnesota choice of law rules." *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1393 (8th Cir. 1997). Under Minnesota choice-of-law principles, the Court must first "consider whether a conflict actually exists between the different states and whether there would be constitutional problems with either law." *Id*. If there is a conflict and neither state's law would pose constitutional problems, the Court must consider the following five factors in order to determine the applicable law: "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." *Id*. (citation omitted). Here, the parties agree that Minnesota and Wisconsin have different statutes of limitations and that neither statute of limitations poses constitutional problems.

The Court will therefore turn to the remaining five factors to identify which state's law applies here.

The first factor is "most relevant when parties have expectations about the applicable law." *Id*. at 1394. This case concerns statements contained in an article written by a Minnesota resident and published in a Minnesota newspaper. The article largely discusses events that occurred in Minnesota, including Minnesota state court proceedings. Though it is reasonable to expect that Wisconsin residents would be able to view the article, largely because it was published online, it is unlikely that either Defendant expected Wisconsin law "to apply to statements made to a newspaper in Minnesota." *Id*. The first factor weighs in favor of Minnesota law.

The second factor "is satisfied if applying Minnesota law would not show disrespect for [Wisconsin] sovereignty or impede interstate commerce." *Id*. In assessing this factor, courts look at "the contacts the state has with the issues being litigated," as well as "the risk of encouraging forum shopping by applying that state's law." *Id*. Here, while both states have contacts to the issues being litigated, Minnesota's contacts are more extensive. Wisconsin is connected to the case only because the subject of the article lives in Wisconsin and because the article was available to Wisconsin residents. Minnesota is connected to the case because in addition to the article being available to Minnesota residents, the article discussed legal proceedings and events that occurred in Minnesota, the author of the article lives in Minnesota, and the paper that published the article is headquartered and registered in Minnesota. Furthermore, application of Wisconsin law would encourage forum shopping because Wisconsin's statute of limitations is more

favorable to plaintiffs than Minnesota. *Id*. On balance, the second factor favors Minnesota law.

The third factor, whether Wisconsin or Minnesota law could more easily be applied here "has no real significance" to this matter. *Id*. Each state's statute of limitations could easily be applied in this case. This factor weighs in favor of neither party.

"The fourth factor, advancement of the forum's interests . . . considers both Minnesota's governmental interests and the relative interests of [Wisconsin]." *Id*. Both states have roughly the same interest. Both have enacted statutes of limitations that serve dual purposes: "the repose of the defendant and the fair and effective administration of justice." *Hempel v. Creek House Trust,* 743 N.W.2d 305, 311 (Minn. App. 2007) (quoting *Dalton v. Dow Chem. Co.*, 158 N.W.2d 580, 584 n. 2 (Minn. 1968)); *see also Strassman v. Muranyi*, 594 N.W.2d 398, 400 (Wisc. App. 1999) (explaining that purpose of statute of limitations "is to ensure prompt litigation of valid claims and to protect the defendant from fake or fraudulent claims brought after evidence has been lost and memories [have] faded.") (citation omitted). Neither state's statute of limitations can be applied without undercutting the other state's statute of limitations. This factor also does not weigh in favor of either side.

The final factor, application of the better rule of law, need not be considered here. The Court must address "[c]oncern for the 'better law' . . . only when other choice-influencing considerations leave the choice of law uncertain." *Myers v. Gov't Emp. Ins. Co.*, 225 N.W.2d 238, 244 (Minn. 1974). In this case, the choice of law is certain because two factors favor Minnesota law, two factors are neutral, and not a single factor favors

Wisconsin law. *See id.* (declining to consider fifth factor because all factors either weighed in favor of Minnesota law or were neutral). Minnesota law, including Minnesota's statute of limitations, therefore applies to Fredin's complaint.

### 2.  Fredin did not timely commence suit under Minnesota law

The Court must now consider whether Fredin timely commenced this action under Minnesota law. State commencement laws apply in federal diversity actions. *Larsen*, 218 F.3d at 867. Under Minnesota law, a lawsuit is commenced on the date: (1) the summons is served on the defendant, (2) service is waived by the defendant; or (3) when the summons is delivered to the sheriff in the county where the sheriff lives. Minn. R. Civ. P. 3.01.

Federal Rule of Civil Procedure 4 governs how service is effected in diversity actions. *Larsen*, 218 F.3d at 867. Accordingly, this action did not commence under Minnesota law until Fredin served Defendants in the manner prescribed by Rule 4. *See id.* Under Rule 4, a plaintiff may serve a defendant by notifying the defendant of the action and requesting the defendant waive service of the summons. Fed. R. Civ. P. 4(d)(1). Service is complete once the defendant returns the waiver and the plaintiff files the waiver with the Court. *Id.* at 4(d)(4). The plaintiff may also arrange for personal service of the summons and complaint. *Id.* at 4(c)(1). Personal service may be accomplished by any person who is at least 18 years old and not a party to the action or by a person specially appointed by the Court to effect service. *Id.* at 4(c)(2) and (3). In this case, Defendants were personally served by the Marshal Service.

Because publication of the allegedly defamatory article occurred on February 22, 2017, Fredin would ordinarily be required to commence this action on or before February

22, 2019. In this case, however, Fredin submitted an IFP application when he filed his complaint with the Court. When an IFP application is granted, the responsibility to serve the complaint shifts from the plaintiff to the Court and the plaintiff must rely on the Clerk of Court to obtain a waiver of service or the Marshal Service to serve the defendants personally. *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986). The Court must therefore consider whether Fredin's IFP status had any impact on the statute of limitations in this case.

Courts typically toll the statute of limitations while screening an IFP application. *See Powell v. Jacor Commc'ns Corp.*, 320 F.3d 599, 603 (6th Cir. 2003) (tolling statute of limitations while the Court considered an IFP application in a diversity jurisdiction case); *see also Jones v. Bertrand*, 171 F.3d 499, 502 (7th Cir. 1999) (holding that "since an inmate cannot foresee how or when a court will rule on an IFP application, the reasonable interpretation is to allow a tolling in the statute of limitations while the IFP application is pending[.]"). Typically when a plaintiff files an IFP application, the statute of limitations is tolled from the day the application is filed until five days after the court rules on it, so that the plaintiff has time to receive the order and prepare a response. *Walter v. Ports Am.*, No. 09-cv-3663, 2011 WL 5415176, at *5 (S.D. Tex. Nov. 8, 2011); *Nkengfack v. Am. Ass'n of Retired Persons*, 818 F. Supp. 2d 178, 183 (D.D.C. 2011). Applying these principles here, the Court will toll the statute of limitations from February 19, 2020, when Fredin filed his IFP application,[6] to March 20, 2019, five days after the Court determined

---

[6] The Court did not receive Fredin's IFP application until February 25, 2019. But because Fredin was incarcerated at the time he submitted the application, the Court will deem his application to be filed the day he delivered it to prison

Fredin's IFP application was deficient and ordered him to pay a partial filing fee. (ECF No. 5). Following this 29-day period, the statute of limitations began to run again because it was Fredin's responsibility to provide the partial filing fee in order for the matter to move forward. *See Walter*, 2011 WL 5415176, at *5.

The statute of limitations ran until April 10, 2019, when Fredin placed his partial filing fee in the mail. (ECF No. 10). It was then tolled until May 1, 2019, five days after the Court granted Fredin's IFP application and the Clerk of Court sent Fredin Marshal service forms to complete. *See Walter*, 2011 WL 5415176, at *5. The statute of limitations began to run again because it was Fredin's responsibility to complete and return the service forms to the Clerk of Court. The statute of limitations had been tolled for a total of 50 days at this point.

The Court received Fredin's completed service forms on May 23, 2019. Though nothing in the record establishes when Fredin delivered the service forms to prison officials for mailing, the Court will, out of an abundance of caution, assume that he placed them in the mail on May 18, 2019, five days before they were received by the Clerk of Court. This is consistent with the five-day period the Court gave Fredin to receive and begin responding to the Court's previous order regarding his IFP application.

Furthermore, the Court concludes that once Fredin submitted the properly completed service forms to the Clerk of Court, he had served the complaint pursuant to Federal Rule of Civil Procedure 4. Of course, the Court recognizes that Defendants had not

---

officials for mailing under the prison-mailbox rule. *See Semler v. Johnson*, No. 17-cv-2822, 2019 WL 5854039, at *1-*2 (D. Minn. Nov. 8, 2019).

actually been served at that point, as the Clerk of Court had only just begun the process of requesting that they waive service. The Court further recognizes that, in the ordinary case, the fact that a defendant does not waive service does not toll the statute of limitations. *Larsen*, 218 F.3d at 867-68. Instead, the responsibility is on the plaintiff to ensure personal service is effected before the limitations period expires. *Id*.

This, however, is not the ordinary case. In the ordinary case, the plaintiff has the option of seeking a waiver of service or attempting immediately to serve the defendants personally. *See* Fed. R. Civ. P. 4(d) (stating that the plaintiff "may" request the defendant waive service of the summons). Because of his IFP status, Fredin did not have that option. The Court had ordered the Marshal Service not to attempt personal service until at least 30 days after the Clerk of Court requested that Defendants waive service. (ECF No. 11, p. 3). Furthermore, after the 30-day waiver period expired, the Marshal Service was not able to serve Defendants until the Court ordered it to do so. At this point, Fredin had no control over the service process. *Cf. Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 527 (S.D.N.Y. 2015) (applying doctrine of equitable tolling when the plaintiff can show he or she is unable to act in a timely manner). It would therefore be unfair for the Court to count against the statute of limitations the time that accrued between the return of the service forms and personal service of the complaint because the responsibility to serve the complaint was with the Court. *See Romandette*, 807 F.2d at 311. Thus, under Minnesota Rule of Civil Procedure 3.01, the lawsuit commenced on May 18, 2019, the day the service forms were placed in the mail.

Even with these substantial benefits, Fredin's lawsuit was untimely. Accounting for the 50-day period during which the statute of limitations was tolled, Fredin was required to commence suit on or before April 13, 2019. Because he did not return his service forms until May 18, 2019 and because he has identified no other reason for the Court to toll the statute of limitations his claims are barred by the statute of limitations. The Court therefore recommends that this matter be dismissed with prejudice.

### C. Defendant's Rule 11 Motion

Defendants have moved for sanctions under Federal Rule of Civil Procedure 11. Rule 11 provides, among other things, that when a party "present[s] to the court a pleading, written motion, or other paper," he or she "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any [individual] . . . that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). In assessing whether Rule 11 has been violated, the Court must consider whether the individual's conduct was objectively reasonable. *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1077 (8th Cir. 2017) (citation omitted)

Defendants offer several reasons why Rule 11 sanctions are appropriate. First, they argue sanctions should be imposed because Fredin filed an amended complaint alleging claims under Wisconsin law only after he learned that his original complaint might be time-

barred. In support of this argument, Defendants note that Fredin has filed several other lawsuits that relate to the article at issue here, and that he has never argued that Wisconsin law applied in those cases. Second, Defendants argue that sanctions are appropriate because none of the challenged statements are actionable under Minnesota or Wisconsin law. Finally, Defendants ask the Court to sanction Fredin for alleging the Court had jurisdiction over his complaint because of a non-existent copyright infringement claim. Defendants suggest the Court sanction Fredin by enjoining him from filing future lawsuits against Star Tribune Media Company LLC, City Pages, and any of their employees.

The Court recommends Defendants' Rule 11 motion be denied. The Court is sympathetic to Defendants' concerns. In particular, it is troubling that Fredin would argue these claims arise under Wisconsin law when he has not made the same assertion in other cases related to the same statements. But Defendants have not met their burden to establish that Fredin knew he was acting with improper purpose throughout this proceeding. Choice of law issues can be difficult to resolve even when both parties are represented by experienced legal counsel. *Cf. 3M Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 858 F.3d 561, 566 n. 3 (8th Cir. 2017) (characterizing choice of law analysis as complex). And though Fredin has proceeded under Minnesota law in other lawsuits related to the same article, neither party claims that choice of law was actually litigated in those matters. The Court cannot expect Fredin, a pro se litigant, to necessarily be aware that choice of law could have a significant impact on his claims or that he might need to litigate this issue at some point during this case.

In addition, the Court will not sanction Fredin simply because none of the challenged statements are actionable under Minnesota or Wisconsin law. The fact Fredin, acting pro se, pled claims that might not have survived a Rule 12(b)(6) motion on their merits does not mandate the imposition of Rule 11 sanctions. *See e.g.*, *Solomon*, 795 F.3d at 787 (requiring liberal construction of pro se claims).

Furthermore, the fact that Fredin alleged the Court had subject matter jurisdiction over this matter because of a non-existent copyright claim does not justify sanctions. Fredin insists any reference to a copyright claim was in error and the result of copy-and-paste mistake from a previous complaint. Though Fredin should be more cautious in reviewing his filings in the future, the Court will take him at his word that this was an unintentional error.

Finally, the Court cannot conclude that Fredin's conduct justifies Defendants' proposed sanction. Though the Court may enjoin a person from filing or continuing to litigate certain claims, the Court typically exercises that authority only if the litigant has acted in a vexatious or repetitious manner by raising the same issues multiple times against the same parties. *Stilley v. James*, 48 F. App'x 595, 597 (8th Cir. 2002). This appears to be the first time that Fredin has raised these claims against these particular Defendants. Of course, Fredin should be on notice that if the matter is dismissed and he continues to pursue these claims against Defendants, he will be at risk of being placed on the Court's restricted filer list. But at this point, Fredin's conduct has not risen to the level that justifies placement on the District's restricted filer list. For all of these reasons, the Court recommends that Defendants' Rule 11 motion be denied.

### D. Fredin's Rule 11 Motion

Fredin also seeks sanctions under Rule 11. Fredin appears to argue that Rule 11 sanctions are appropriate because: (1) Defendants sought sanctions on the basis of an obvious typographical error (the accidental reference to a copyright claim) and (2) Defendants had no basis to seek sanctions against him for filing an amended complaint when the Federal Rules of Civil Procedure permitted him to do so.

The Court also recommends that Fredin's Rule 11 motion be denied. Setting aside arguments as to whether Fredin complied with Rule 11 in serving his motion on Defendant, Fredin's motion is without merit. Defendants, of course, had no way of knowing that Fredin had accidentally copied and pasted something from a prior lawsuit into this complaint until Fredin stated as much in his own Rule 11 motion, which he filed after Defendants submitted their own motion. Furthermore, Defendants do far more than argue that Fredin acted improperly by amending his complaint. They point out that Fredin has filed several other cases in this district and that, in each of those cases, Fredin never disputed the application of Minnesota law. It was reasonable for Defendants to question then, whether Fredin had a good faith basis to claim that Wisconsin law applied when he never had done so in the many other cases that he had filed.[7] Nothing in the record suggests that Defendants acted with any improper purpose in bring their Rule 11 motion. The Court therefore recommends that Fredin's Rule 11 motion be denied.

---

[7] Fredin spends considerable time in his Rule 11 papers pointing out the fact that he never claimed Minnesota law applied here. But until the time he filed his amended complaint, he never expressly claimed that Wisconsin law applied either. Defendants did not act unreasonably in assuming that Fredin's claims arose under Minnesota law given the way Fredin's other cases proceeded.

### E.  Service Costs

When the Court granted Fredin's IFP application, it directed the Clerk of Court to seek waiver of service from each Defendant under Federal Rule of Civil Procedure 4(d). (ECF No. 11, p. 3). The Court noted that, if Defendants failed without good cause to sign and return their respective waivers, the Court would impose under Rule 4(d)(2) "the expenses later incurred in effecting service of process" upon each Defendant. (ECF No. 11, p. 3). In addition, when the Court issued its original case management order regarding Defendants' first motion to dismiss, it directed Defendants to explain why they should not be required to reimburse the U.S. Marshals Service for the reasonable expenses incurred in effecting service. (ECF No. 25, p. 1). Defendants have provided no reasonable explanation as to why they should not be held responsible for those costs.[8] The U.S. Marshal Service has indicated that it incurred $130.00 in expenses in serving each Defendant, which is more than reasonable in light of the ordinary costs of service. (ECF No. 18, p. 1, 3). Accordingly the Court recommends that each Defendant be ordered to reimburse the U.S. Marshal Service $130.00 as compensation for the reasonable expenses the U.S Marshal Service incurred in effecting service.

## III.  RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

---

[8] To the extent Defendants did not waive service because they believed Fredin's claims were barred by the applicable statute of limitations, this does not constitute good cause, "as such an argument could easily be made in a later Motion to Dismiss, with minimal cost to the Defendant." *Reed v. Aqueon Prod.*, No. 11-cv-6027, 2011 WL 13238751, at *1 (W.D.N.Y. Sept. 13, 2011)

1.   Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No. 83) be

**DENIED**;

2.   Defendants' Motion to Dismiss the Amended Complaint with Prejudice for Failure

to State a Claim under Fed. R. Civ. P. 12(b)(6) be **GRANTED** (ECF No. 31) and the

amended complaint be **DISMISSED WITH PREJUDICE**;

3.   Defendants' Fed. R. Civ. P. 11 Motion for Sanctions (ECF No. 37) be **DENIED**;

4.   Fredin's motion for cross sanctions (ECF No. 46) be **DENIED**; and

5.   Each Defendant reimburse the U.S. Marshal Service $130.00 as reasonable services

incurred in effecting personal service on Defendants.


Date: May 19, 2020                             _____*s/ Tony N. Leung*_____
                                               Tony N. Leung
                                               United States Magistrate Judge
                                               District of Minnesota

                                               *Fredin v. City Pages, et al.*
                                               No. 19-cv-472 (DWF/TNL)


## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).